Dear Secretary Johnson,
¶ 0 This office has received your request for an Attorney General Opinion addressing, in effect, the following questions:
1. Does the authority of the State of Oklahoma (as exercisedby the Commissioners of the Land Office) granted by Section 8 ofthe Oklahoma Enabling Act, 34 Stat. 267, 273 (1906) and by 64O.S. 1991, § 92[64-92], § 281 and § 285, extend to offering oil andgas leases where the potential lessees may bid on both the amountof the bonus, and on the rate of royalty, to be paid from theproduction of oil and gas from leased premises?
 2. If the answer to the above question is in the negative,could the Legislature pass legislation to accomplish thedescribed leasing procedure without being violative of theEnabling Act?
 I. INTRODUCTION
¶ 1 Your questions relate to the procedures that the Commissioners of the Land Office must utilize in exercising their duties in leasing, for oil and gas purposes, public lands under their control and supervision. As trustees of common school lands granted under the Oklahoma Enabling Act, the Commissioners of the Land Office, on behalf of the State, have an "irrevocable duty" to "manage the trust estate for the exclusive benefit of the beneficiaries, and return full value from the use and disposition of the trust property." Oklahoma Education Association v. Nigh,642 P.2d 230, 235 (Okla. 1982). The provision relevant to our analysis of your questions is found at Section 8 of the Oklahoma Enabling Act, 34 Stat. 267, 273 (1906).
¶ 2 The Commissioners of the Land Office ("the Commissioners") act as trustees for the State of Oklahoma in administering certain public lands and funds granted to the State of Oklahoma upon its admission into the Union. These public lands were granted to the State of Oklahoma by the Oklahoma Enabling Act,34 Stat. 267, 273 (1906 and this grant was accepted irrevocably by the people of Oklahoma and recorded in the Oklahoma Constitution at Article XI, § 1.
 II. ENABLING ACT PROVISIONS
¶ 3 Section 8 of the Oklahoma Enabling Act explains that "[w]here any part of the lands granted by this Act to the State of Oklahoma are valuable for minerals, gas and oil," the lands may be leased subject to certain limitations. The relevant portion states:
 [T]he same may be leased for periods not exceeding five years by the State officers [Commissioners of the Land Office] duly authorized for that purpose, such leasing to be made by public competition after not less than thirty days advertisement in the manner to be prescribed by law, and all such leasing shall be done under sealed bids and awarded to the highest responsible bidder. The leasing shall require and the advertisement shall specify in each case a fixed royalty to be paid by the successful bidder, in addition to any bonus offered for the lease, and all proceeds from leases shall be covered into the fund to which that shall properly belong. . . .
Oklahoma Enabling Act, 34 Stat. 267, 273 (1906) (emphasis added).
¶ 4 Section 8 of the Enabling Act states that "[t]he Legislature of the State may prescribe additional legislation governing such leases not in conflict herewith."
 III. WHAT IS "FIXED ROYALTY?"
¶ 5 The threshold question is, what does the term "fixed royalty" mean in the provisions of Section 8 of the Enabling Act? The Commissioners must specify a "fixed royalty" when they advertise a lease for bidding purposes, but the Enabling Act did not define the term "fixed royalty."
¶ 6 "The determination of legislative intent is the goal of statutory construction." Clifton v. Clifton, 801 P.2d 693, 696
(Okla. 1990). Since the term was not defined in the legislation, to ascertain the legislative intent of "fixed royalty," this analysis will utilize the plain ordinary meaning of the word. Generally, "legislative enactments must be interpreted in accordance with their plain ordinary meaning according to the import of the language used." In re Certification of Question ofState Law, 560 P.2d 195, 197 (Okla. 1977). In analyzing the term "fixed royalty," we first look to Webster's Third New International Dictionary 861 (1981) which gives the definition of "fixed" as "securely placed or fastened . . . stationary . . . not subject to change or fluctuation . . . settled, definite . . . rigid, immobile. . . ." If we construe the term "fixed royalty" consistently with Webster's definitions, then a fixed royalty is a royalty that is stationary, not subject to change or fluctuation, is settled or definite. Using this definition, the Commissioners cannot advertise a lease in which only a minimum rate of royalty is specified. Based upon the plain, ordinary meaning of "fixed," the Commissioners must establish and publish a specific or definite royalty rate on which all bidders may base their bids.
 IV. STATE LEGISLATIVE ENACTMENTS
¶ 7 The Oklahoma Legislature passed additional statutory guidance regarding oil and gas leasing procedures for the Commissioners. These related statutes are found at 64 O.S. 1991,§ 92[64-92], § 281 and § 285. The Oklahoma Legislature also has not defined "fixed royalty" for the purposes of these statutes.
¶ 8 Section 8 of the Enabling Act recognized the State Legislature's power to pass additional legislation to further the purposes of its provisions, but specifically noted that additional legislation must not be in conflict with those provisions. Since 1907, the Oklahoma Legislature has enacted three statutes dealing with leasing procedures which may be relevant to your inquiry and which should be examined in light of Article XI, § 1 of the Oklahoma Constitution and Section 8 of the Enabling Act.
¶ 9 "Statutes (and generally Constitutions) must be construed as a consistent whole in harmony with common sense and reason and every portion thereof should be given effect if possible."Cowart v. Piper Aircraft Corporation, 665 P.2d 315, 317 (Okla. 1983).
¶ 10 Oklahoma accepted the grant of public lands from the United States by stating:
 The State hereby accepts all grants of land and donations of money made by the United States under the provisions of the Enabling Act . . . for the uses and purposes and upon the conditions, and under the limitations for which the same are granted or donated; and the faith of the State is hereby pledged to preserve such lands and moneys and all moneys derived from the sale of any of said lands as a sacred trust, and to keep the same for the uses and purposes for which they were granted or donated.
Okla. Const. art. XI, § 1.
¶ 11 Title 64 O.S. 1991, § 92[64-92] deals with the sale of oil, gas and mineral leases. Section 92 contains a requirement that the advertisement for leasing by the Commissioners "shall specify in each case a fixed royalty to be paid by the successful bidder, in addition to any bonus offered for the lease." This language exactly parallels the provisions of Section 8 of the Enabling Act.
¶ 12 Title 64 O.S. 1991, § 281[64-281] relates to oil and gas leasing, and the conditions upon which a lease may be given. Section 281 includes, but is not limited to, provisions on the duration of the lease, the terms allowed, and the assignment of the lease. Section 281 directs that each lease:
 Shall provide for the delivery to the state of a royalty of not less than one-eighth (___) part of the oil or gas produced from the leased premises or in lieu thereof the payment to the state of the market value of said royalty interest, as the commissioners may elect.
64 O.S. 1991, § 281[64-281].
¶ 13 While Section 281 sets requirements for when and where to publish the notice, it does not mention what is required textually for the advertisement to be valid. Section 281 deals with which leases are authorized, not the procedure the Commissioners should follow.
¶ 14 Section 285 provides direction regarding community oil and gas leases, stating that:
 The lease contract of the State, with any lessee for oil and gas purposes, shall stipulate, and the advertisement for bids for leasing such land shall specify a fixed royalty, to be determined by the commissioners of the land office, and in no event less than twelve and one-half per cent of the total output of such oil and gas, and in addition thereto any bonus offered for such lease. . . .
64 O.S. 1991, § 285[64-285].
¶ 15 Here, the Legislature gave clear guidance in requiring not only a fixed royalty, but also that the royalty be determined by the Commissioners, in addition to specifying a minimum acceptable royalty rate.
¶ 16 In comparing Sections 92, 281 and 285, note that they are not in conflict as to what must be in the lease or in the advertisement for bidders. Sections 92 and 285 require a fixed royalty be included within the advertisement for bidders and in the lease itself. Section 281 provides no guidance on what the advertisement for bidders must contain, but instead establishes a minimum for royalty percentages, one of the essential terms the lease must contain.
¶ 17 Thus, these Legislative enactments, as they deal with the royalty rate requirement for oil and gas leasing, are not inconsistent with the provisions in Section 8 of the Enabling Act and Article XI, § 1 of the Oklahoma Constitution.
 V. LEGISLATION
¶ 18 Your second question regards whether the Legislature may pass legislation allowing the Commissioners to offer oil and gas leases whereby potential lessees could bid on both the amount of the bonus and, on the rate of the royalty, to be paid on the production from the leased premises. Since the analysis of your first question determined that the Enabling Act required an established royalty rate be specified by the Commissioners in their advertisement for bidders on each prospective lease, the Legislature is only empowered to prescribe additional legislation governing such leases not in conflict with other provisions of Section 8 of the Enabling Act. Subsequent legislation which allowed the Commissioners to advertise and lease oil and gas properties without specifying an exact royalty percentage on which all bidders must base their bids would be in conflict with the provisions of Section 8 of the Enabling Act and would not be valid. In 1956, the Oklahoma Supreme Court discussed the power of the Enabling Act regulations and stated that they "exist as valid laws of the United States, which may not be modified, restricted or changed by an Act of the Oklahoma Legislature or the people of Oklahoma in amendment of the Oklahoma Constitution." State v.Commissioners of the Land Office, 301 P.2d 655, 659 (Okla. 1956).
¶ 19 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The authority of the State of Oklahoma as exercised by theCommissioners of the Land Office does not extend to offering oiland gas leases where the potential lessees may bid on both theamount of the bonus, and on the rate of royalty, to be paid onthe production of oil and gas from the leased premises OklahomaEnabling Act, § 8, 34 Stat. 267, 273 (1906) 64 O.S. 1991, § 92[64-92], §281 and § 285.
 2. The provisions of 64 O.S. 1991, § 92[64-92], § 281 and § 285dealing with rate of royalty for oil and gas leases on propertyadministered by the Commissioners of the Land Office are notcontrary to, or inconsistent with, the provisions of Section 8 ofthe Oklahoma Enabling Act, 34 Stat. 267, 273 (1906) nor ArticleXI, § 1 of the Oklahoma Constitution.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GLEN D. HAMMONDS ASSISTANT ATTORNEY GENERAL